# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

WILLIE L. BROWN,

    Plaintiff,

    v.

        CASE NO. _____

        3:26-cv-328-JEP-LLL

AMERICAN HOLDING 33092, LLC, a New Mexico limited liability company;

2212 SOTTERLEY LANE LAND TRUST;

SOTTERLEY HOLDINGS 32220, LLC;

CLAY COUNTY HOLDINGS 32073, LLC;

ASSOCIATION OF POINCIANA OWNERS VILLAGE TWO, LLC

    Defendant(s).

_____

## COMPLAINT

Plaintiff, complaining of the Defendants, alleges and says:

### PARTIES

1. Plaintiff Willie L. Brown is a resident of Florida.

2. Defendant American Holding 33092, LLC is a limited liability company formed under the laws of New Mexico with a principal place of business in New Mexico.

3. Defendant Sotterley Holdings 32220, LLC is a limited liability company formed under the laws of Florida with a principal place of business in Florida.

4. Defendant 2212 Sotterley Lane Land Trust is a land trust formed under the laws of Florida

with a principal place of business in 2212 Sotterley Lane, Jacksonville, FL 32220.

5.  Defendant Clay County Holdings 32073, LLC is a limited liability company formed under the laws of New Mexico with a principal place of business in New Mexico.

6.  Defendant Association of Poinciana Owners Village Two, LLC is a limited liability company formed under the laws of Florida with a principal place of business in Florida.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331 and 28 USCS § 1332, because this action arises under federal law, specifically and , and because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.

8.  This Court has subject matter jurisdiction pursuant to 28 USCS § 1331 because this action arises under the Constitution and laws of the United States, specifically the Racketeer Influenced and Corrupt Organizations Act.

9.  This Court has diversity jurisdiction pursuant to 28 USCS § 1332 because Plaintiff is a citizen of Florida, Defendants American Holding 33092, LLC and Clay County Holdings 32073, LLC are citizens of New Mexico, and the matter in controversy exceeds $75,000, exclusive of interest and costs, when treble damages, punitive damages, attorney's fees, and consequential losses are considered.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USCS § 1367.

11. This Court has personal jurisdiction over American Holding 33092, LLC as all actions took place within this district.

12. This Court has personal jurisdiction over Sotterley Holdings 32220, LLC because it is a limited liability company formed under the laws of Florida.

13. This Court has personal jurisdiction over 2212 Sotterley Lane Land Trust as all actions took place within this district.

14. This Court has personal jurisdiction over Clay County Holdings 32073, LLC as all actions took place within this district.

15. This Court has personal jurisdiction over Association of Poinciana Owners Village Two, LLC because it is a limited liability company formed under the laws of Florida.

16. Venue is proper in this Court pursuant to 28 USCS § 1391 because a substantial part of the events giving rise to the claims occurred in this judicial district, including the foreclosure sale conducted on May 30, 2024, and because the property that is the subject of this action is situated at 2212 Sotterley Lane, Jacksonville, Florida 32220, which is located within this judicial district.

**STATEMENT OF FACTS**

17. This action arises from a coordinated fraudulent scheme to manufacture and execute a foreclosure sale on residential real property located at 2212 Sotterley Lane, Jacksonville, Florida 32220.

18. The property is legally described as Lot 3, of Pritchard Plantation - Phase 1, according to the plat thereof, as recorded in Plat Book 63, at Pages 71 through 81, of the Public Records of Duval County, Florida.

19. Defendants knowingly concealed superior liens, manipulated title records, executed suspect

waivers of service, and advanced a foreclosure despite defective standing.

20. The chain of title reflects that U.S. Bank National Association held a mortgage on the property.

21. Nevertheless, the land trust later executed a mortgage stating there were no other encumbrances.

22. The property passed through multiple entities, including Sotterley Holdings 32220, LLC, Clay County Holdings 32073, LLC, 2212 Sotterley Lane Land Trust, and Association of Poinciana Owners Village Two, LLC.

23. Several deed transfers occurred without meaningful exchange of value.

24. Such transfers are classic badges of fraud designed to obscure beneficial ownership.

25. The use of a land trust allowed the real beneficiaries to remain hidden.

26. Defendants were facing an impending foreclosure by the primary mortgage holder, U.S. Bank National Association.

27. To generate proceeds quickly, Defendants initiated their own foreclosure.

28. The foreclosure created the appearance of an adversarial proceeding when insiders were allegedly working together.

29. Defendant American Holding 33092, LLC initiated foreclosure proceedings in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida, under Case No. 16-2024-CC-002389-AXXX-MA.

30. The foreclosure action was styled American Holding 33092, LLC v. Sotterley Holdings 32220, LLC, et al.

31. Waivers of service were executed four days before the complaint was filed.

32. There was effectively no real litigation.

33. On April 11, 2024, the Duval County Circuit Court entered a Final Judgment of Foreclosure in Case No. 16-2024-CC-002389.

34. The Final Judgment scheduled a foreclosure sale for May 30, 2024.

35. Notice of sale was published in the Jacksonville Daily Record, a newspaper circulated in Duval County, Florida, on May 16, 2024 and May 23, 2024.

36. On May 30, 2024, the property was offered for public sale at 11:00 a.m. via the Clerk's website for online auctions at www. duval. realforeclose.com.

37. Plaintiff is an innocent third-party purchaser whose rights were directly injured by a fraudulently obtained judgment.

38. Plaintiff relied on the integrity of the judicial foreclosure system.

39. Plaintiff reasonably believed the foreclosure involved a primary mortgage.

40. In reality, Defendants concealed the superior lien held by U.S. Bank National Association.

41. Plaintiff submitted the highest bid of $60,100.00 at the public auction.

42. The Clerk of the Circuit and County Courts certified the sale to Plaintiff on May 30, 2024. (Exhibit B)

43. The proceeds of the sale were retained by the Clerk for distribution in accordance with the Final Judgment.

44. On June 10, 2024, a Certificate of Title was issued to Plaintiff and was subsequently recorded in the official records of Duval County, Florida.

45. On June 24, 2024, Defendant American Holding 33092, LLC filed a motion seeking disbursement of proceeds from the May 30, 2024 foreclosure sale in the amount of $18,285.00.

46. A surplus of $41,815.00 remained outstanding.

47. On July 3, 2024, Defendant Sotterley Holdings 32220, LLC, on behalf of itself and any and all defendants and previous co-owners, filed a claim for the surplus funds.

48. Only after the purchase did the foreclosure become contested due to serious irregularities.

49. Plaintiff filed a motion to vacate the foreclosure sale and redeem his bid funds.

50. On October 31, 2024, the state court entered an order recognizing that Plaintiff had standing as a non-party injured by a potentially fraudulent judgment.

51. The state court expressly found an irregularity in the documentation of the parties of record and potentially deceptive conduct of the parties. (Exhibit A)

52. The state court identified specific concerns including failure to list the primary mortgage, waivers of service executed before the complaint, and failure to conduct foreclosure as a foreign corporation.

53. The state court further considered whether the sale should be vacated on equitable grounds.

54. Plaintiff was granted the right to conduct discovery based on those irregularities.

55. The state court stayed all further disbursements on the sale pending discovery and further hearings.

56. Defendants used interstate wires including electronic foreclosure platforms, digital court filings, interstate LLC operations, and electronic fund transfers.

57. Defendants formed an association-in-fact enterprise.

58. The enterprise's purpose was to extract money from foreclosure sales before the primary lender could foreclose.

59. Plaintiff now faces the risk that the sale may be vacated.

60. Registry funds have been disputed.

61. Plaintiff has incurred litigation expenses and lost investment opportunities.

62. Plaintiff would never have bid had the truth been disclosed.

63. Plaintiff does not seek appellate review of any state judgment but instead seeks damages for independent fraud and racketeering conduct.

## CLAIMS FOR RELIEF

### Count I – Violation of
### 18 USCS § 1962

### (against all defendants)

64. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

65. Defendants conducted the affairs of an enterprise through a pattern of racketeering activity.

66. Defendants formed an association-in-fact enterprise for the purpose of extracting money from foreclosure sales before the primary lender could foreclose.

67. The enterprise consisted of American Holding 33092, LLC, Sotterley Holdings 32220, LLC, 2212 Sotterley Lane Land Trust, Clay County Holdings 32073, LLC, and Association of Poinciana Owners Village Two, LLC.

68. The enterprise engaged in and affected interstate commerce.

69. Defendants conducted or participated in the conduct of the enterprise's affairs.

70. Defendants conducted the enterprise's affairs through a pattern of racketeering activity.

71. The pattern of racketeering activity consisted of multiple acts of wire fraud.

72. Defendants transmitted false foreclosure representations electronically through interstate wires.

73. These transmissions included electronic foreclosure notices, digital court filings, interstate

LLC operations, and electronic fund transfers.

74. Defendants transmitted foreclosure notices via electronic platforms that crossed state lines.

75. Defendants filed documents electronically in the state court system using interstate communications infrastructure.

76. Defendants operated limited liability companies formed in multiple states, requiring interstate communications.

77. Defendants transferred funds electronically in connection with the foreclosure scheme.

78. Each electronic transmission constituted a separate act of wire fraud.

79. These acts were related to each other as part of a common scheme to defraud potential bidders at the foreclosure sale.

80. The acts demonstrated continuity because they occurred over a period of months and were part of an ongoing scheme.

81. Defendants acted with the specific intent to defraud Plaintiff and other potential bidders.

82. Defendants knew that the foreclosure was defective and that material information was being concealed.

83. Defendants knew that U.S. Bank National Association held a superior mortgage on the property.

84. Defendants knew that the land trust had executed a mortgage falsely stating there were no other encumbrances.

85. Defendants knew that waivers of service had been executed before the complaint was filed.

86. Defendants knew that American Holding 33092, LLC had failed to properly qualify as a foreign corporation.

87. Despite this knowledge, Defendants proceeded with the foreclosure sale to induce bidders to purchase the property.

88. Plaintiff was injured in his business or property by reason of Defendants' violations.

89. Plaintiff paid $60,100.00 to purchase the property at the foreclosure sale.

90. Plaintiff relied on the legitimacy of the judicial foreclosure process.

91. Plaintiff would not have bid on the property had he known of the concealed superior lien and other irregularities.

92. Plaintiff now faces the risk that the sale will be vacated and he will lose his investment. Either way the investment is already lost because plaintiff does not have title to the property.

93. Plaintiff has incurred litigation expenses to protect his interests.

94. Plaintiff has lost investment opportunities due to the uncertainty surrounding his ownership of the property.

95. Plaintiff's injury was directly and proximately caused by Defendants' racketeering activity.

96. But for Defendants' fraudulent scheme, Plaintiff would not have purchased the property and would not have suffered these losses.

### Count II - Conspiracy to Violate
### 18 USCS § 1962

**(against all defendants)**

97. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 96 as if fully set forth herein.

98. Defendants knowingly agreed to participate in the conduct of the enterprise's affairs

through a pattern of racketeering activity.

99. Defendants agreed to conduct the enterprise through wire fraud.

100. The agreement is evidenced by the coordinated nature of the foreclosure scheme.

101. Multiple entities transferred the property among themselves without meaningful consideration.

102. Waivers of service were executed four days before the complaint was filed, indicating coordination between the plaintiff and defendants in the foreclosure action.

103. The foreclosure proceeded despite obvious defects, suggesting agreement among the parties.

104. The land trust executed a mortgage falsely stating there were no other encumbrances, facilitating the scheme.

105. Each Defendant committed overt acts in furtherance of the conspiracy.

106. American Holding 33092, LLC filed the foreclosure complaint.

107. Sotterley Holdings 32220, LLC and other defendants executed waivers of service before the complaint was filed.

108. The land trust executed a mortgage concealing the superior lien.

109. Defendants transferred the property through multiple entities to obscure ownership.

110. Defendants proceeded with the foreclosure sale despite knowing of the defects.

111. Defendants filed motions to disburse the sale proceeds.

112. Plaintiff was injured by the conspiracy.

113. Plaintiff paid $60,100.00 based on the fraudulent foreclosure.

114. Plaintiff faces the risk of losing his investment.

115. Plaintiff has incurred litigation expenses.

116.    Plaintiff has lost investment opportunities.

## Count III - Fraudulent Misrepresentation

### (against all defendants)

117.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 116 as if fully set forth herein.

118.    Defendants made false representations of material fact to Plaintiff.

119.    Defendants represented through the judicial foreclosure process that the foreclosure was valid and proper.

120.    Defendants represented that American Holding 33092, LLC had the right to foreclose on the property.

121.    The land trust represented through its mortgage that there were no other encumbrances on the property.

122.    These representations were made through the foreclosure complaint, the mortgage documents, and the public foreclosure sale.

123.    The representations were false.

124.    American Holding 33092, LLC did not have proper standing to foreclose because it failed to qualify as a foreign corporation.

125.    The foreclosure was not valid because waivers of service were executed before the complaint was filed.

126.    The representation that there were no other encumbrances was false because U.S. Bank National Association held a superior mortgage.

127.    The foreclosure was not a legitimate adversarial proceeding but rather a coordinated

scheme among insiders.

128.    Defendants knew the representations were false at the time they were made.

129.    Defendants knew of the superior mortgage held by U.S. Bank National Association.

130.    Defendants knew that waivers of service had been executed before the complaint was filed.

131.    Defendants knew that American Holding 33092, LLC had not properly qualified as a foreign corporation.

132.    Defendants knew that the foreclosure was a coordinated scheme rather than a legitimate adversarial proceeding.

133.    Defendants intended for Plaintiff to rely on the false representations.

134.    Defendants conducted a public foreclosure sale to attract bidders.

135.    Defendants published notice of the sale in a newspaper.

136.    Defendants offered the property for sale on a public auction website.

137.    Defendants knew that bidders would rely on the apparent legitimacy of the judicial foreclosure process.

138.    Defendants intended to induce bidders to purchase the property and pay money.

139.    Plaintiff justifiably relied on the representations.

140.    Plaintiff relied on the integrity of the judicial foreclosure system.

141.    Plaintiff reasonably believed that a foreclosure conducted through the court system and certified by the Clerk would be legitimate.

142.    Plaintiff did not know of the concealed superior lien or other irregularities and relied on the proper bidding procedures.

143.    The information was not publicly available or readily discoverable.

144.    Plaintiff's reliance was reasonable under the circumstances.

145.    Plaintiff suffered damages as a proximate result of his reliance.

146.    Plaintiff paid $60,100.00 to purchase the property.

147.    Plaintiff now faces the risk that the sale will be vacated.

148.    Plaintiff has incurred litigation expenses.

149.    Plaintiff has lost investment opportunities.

150.    But for the false representations, Plaintiff would not have bid on the property and
would not have suffered these losses.


### Count IV - Fraudulent Inducement

### (against all defendants)

151.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 157 as if
fully set forth herein.

152.    Defendants engaged in a scheme to fraudulently induce bidders to purchase the
property at the foreclosure sale.

153.    The foreclosure sale was designed to induce bidders.

154.    Defendants published notice of the sale in a newspaper circulated in Duval County.

155.    Defendants offered the property for sale on a public online auction platform.

156.    Defendants conducted the sale through the judicial system to create an appearance of
legitimacy.

157.    Defendants knew that the judicial process would induce reliance by potential bidders.

158.    Defendants made false representations and concealed material facts to induce bidders.

159.    Defendants concealed the existence of the superior mortgage held by U.S. Bank

National Association.

160.  Defendants concealed that waivers of service had been executed before the complaint was filed.

161.  Defendants concealed that American Holding 33092, LLC had not properly qualified as a foreign corporation.

162.  Defendants concealed that the foreclosure was a coordinated scheme rather than a legitimate adversarial proceeding.

163.  Defendants represented through the land trust's mortgage that there were no other encumbrances.

164.  These concealments and misrepresentations were material to Plaintiff's decision to bid.

165.  Plaintiff would not have purchased the property absent the deception.

166.  Plaintiff would not have bid on the property if he had known of the superior mortgage.

167.  Plaintiff would not have bid if he had known of the irregularities in the foreclosure process.

168.  Plaintiff would not have bid if he had known that the foreclosure was a coordinated scheme.

169.  Plaintiff relied on the apparent legitimacy of the judicial foreclosure.

170.  Plaintiff was damaged by the fraudulent inducement.

171.  Plaintiff paid $60,100.00 based on the fraudulent inducement.

172.  Plaintiff now faces the risk of losing his investment.

173.  Plaintiff has incurred litigation expenses.

174.  Plaintiff has lost investment opportunities.

**Count V - Civil Conspiracy**

**(against all defendants)**

175.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 174 as if fully set forth herein.

176.    Defendants agreed to obscure title and fabricate an adversarial foreclosure.

177.    The agreement is evidenced by the coordinated actions of the Defendants.

178.    The property was transferred through multiple entities without meaningful consideration.

179.    Waivers of service were executed four days before the foreclosure complaint was filed.

180.    The land trust executed a mortgage falsely stating there were no other encumbrances.

181.    The foreclosure proceeded despite obvious defects.

182.    Multiple defendants filed claims for the surplus proceeds.

183.    Defendants committed unlawful acts in furtherance of the conspiracy.

184.    Defendants committed fraud by concealing the superior mortgage and other material facts.

185.    Defendants filed false pleadings in the foreclosure action.

186.    Defendants executed false mortgage documents.

187.    Defendants conducted a foreclosure sale based on false and misleading information.

188.    These acts were unlawful under Florida law.

189.    Plaintiff suffered damages as a result of the conspiracy.

190.    Plaintiff paid $60,100.00 based on the fraudulent foreclosure.

191.    Plaintiff now faces the risk of losing his investment and further costs.

192.    Plaintiff has incurred litigation expenses.

193.    Plaintiff has lost investment opportunities.

194.    Defendants are jointly and severally liable for Plaintiff's damages.


### Count VI - Negligent Misrepresentation

### (against all defendants)

195.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 194 as if

fully set forth herein.

196.    Defendants had a duty to provide accurate information in connection with the

foreclosure sale.

197.    Defendants initiated and conducted a judicial foreclosure sale.

198.    Defendants invited the public to bid on the property.

199.    Defendants had superior knowledge of the property's title and the foreclosure's validity.

200.    Defendants knew or should have known that bidders would rely on the information

provided.

201.    Defendants breached their duty by providing false or misleading information.

202.    Defendants failed to disclose the superior mortgage held by U.S. Bank National

Association.

203.    Defendants failed to disclose the irregularities in the foreclosure process.

204.    Defendants failed to disclose that waivers of service were executed before the

complaint was filed.

205.    Defendants failed to disclose that American Holding 33092, LLC had not properly

qualified as a foreign corporation.

206.    The land trust represented that there were no other encumbrances when it knew or should have known of the superior mortgage.

207.    Even if Defendants did not act with intent to deceive, they were negligent in failing to verify the accuracy of the information provided.

208.    Plaintiff justifiably relied on the information provided by Defendants.

209.    Plaintiff relied on the apparent legitimacy of the judicial foreclosure.

210.    Plaintiff had no independent means of discovering the concealed information.

211.    Plaintiff's reliance was reasonable under the circumstances.

212.    Plaintiff suffered economic damages as a result of his reliance.

213.    Plaintiff paid $60,100.00 to purchase the property.

214.    Plaintiff now faces the risk that the sale will be vacated.

215.    Plaintiff has incurred litigation expenses.

216.    Plaintiff has lost investment opportunities.

## Count VII - Unjust Enrichment

### (against all defendants)

217.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 216 as if fully set forth herein.

218.    Plaintiff conferred a benefit upon Defendants.

219.    Plaintiff paid $60,100.00 at the foreclosure sale.

220.    The proceeds of the sale were distributed or claimed by Defendants.

221.    American Holding 33092, LLC received $18,285.00 from the sale proceeds.

222.    Sotterley Holdings 32220, LLC claimed the surplus of $41,815.00 on behalf of itself and other defendants.

223.    Defendants have received or claim entitlement to Plaintiff's money.

224.    Defendants had knowledge of the benefit.

225.    Defendants knew that Plaintiff paid $60,100.00 at the foreclosure sale.

226.    Defendants knew that the sale proceeds were being held by the Clerk.

227.    Defendants filed motions seeking distribution of the proceeds.

228.    Defendants accepted or claimed the benefit of Plaintiff's payment.

229.    Defendants voluntarily accepted the circumstances leading to the benefit.

230.    Defendants retained the benefit under circumstances that make it inequitable for them to do so.

231.    The foreclosure was based on fraud and deception.

232.    Defendants concealed material information from Plaintiff.

233.    Defendants manipulated the foreclosure process.

234.    The state court found irregularities and potentially deceptive conduct.

235.    It would be unjust for Defendants to retain Plaintiff's money given the fraudulent nature of the foreclosure.

236.    Plaintiff has no adequate remedy at law.

237.    Plaintiff seeks restitution of the $60,100.00 paid at the foreclosure sale plus damages.


**Count VIII - Fraudulent Conveyance**

**(against all defendants)**

238.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 237 as if

fully set forth herein.

239. Defendants made serial transfers of the property to hinder creditors and mislead buyers.

240. The property passed through multiple entities including Sotterley Holdings 32220, LLC, Clay County Holdings 32073, LLC, 2212 Sotterley Lane Land Trust, and Association of Poinciana Owners Village Two, LLC.

241. These transfers occurred without meaningful exchange of value.

242. The transfers were made with actual intent to hinder, delay, or defraud creditors or purchasers.

243. The transfers were designed to obscure beneficial ownership of the property.

244. The use of a land trust allowed the real beneficiaries to remain hidden.

245. The transfers were made in anticipation of the impending foreclosure by U.S. Bank National Association.

246. The transfers were made to facilitate the fraudulent foreclosure scheme.

247. The transfers exhibit badges of fraud.

248. The transfers were made between related entities.

249. The transfers were made without adequate consideration.

250. The transfers were made shortly before the foreclosure.

251. The transferors retained an interest in or control over the property.

252. The transfers were part of a pattern of transfers among related entities.

253. Plaintiff was harmed by the fraudulent conveyances.

254. The conveyances obscured the true ownership and encumbrances on the property.

255. The conveyances facilitated the fraudulent foreclosure scheme.

256.    Plaintiff relied on the apparent chain of title and was misled.

257.    Plaintiff seeks avoidance of the fraudulent transfers and damages.


## Count IX - Slander of Title

### (against all defendants)

258.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 257 as if
fully set forth herein.

259.    Defendants recorded instruments that they knew clouded title to the property.

260.    The land trust recorded a mortgage falsely stating there were no other encumbrances.

261.    Defendants recorded deeds transferring the property among related entities without
adequate consideration.

262.    Defendants caused the foreclosure judgment and sale documents to be recorded.

263.    These recorded instruments contained false statements regarding the property's title.

264.    The false statements were made with malice or reckless disregard for the truth.

265.    Defendants knew of the superior mortgage held by U.S. Bank National Association.

266.    Defendants knew of the irregularities in the foreclosure process.

267.    Despite this knowledge, Defendants recorded instruments falsely representing the state
of the title.

268.    Defendants acted with intent to deceive potential purchasers.

269.    Alternatively, Defendants acted with reckless disregard for whether the statements
were true.

270.    The false statements were published to third parties.

271.    The instruments were recorded in the public records of Duval County, Florida.

272.    The recorded instruments were available to and relied upon by the public, including Plaintiff.

273.    The publication caused special damages to Plaintiff.

274.    Plaintiff paid $60,100.00 in reliance on the recorded instruments.

275.    Plaintiff never received physical possession of the property.

276.    Plaintiff has incurred litigation expenses to defend his title. Plaintiff has lost investment opportunities due to the cloud on his title.

277.    Plaintiff suffered financial harm as a direct result of the false recorded instruments.


**Count X - Equitable Restitution**

**(against all defendants)**

279.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 278 as if fully set forth herein.

280.    Equity requires full return of Plaintiff's funds plus damages and the full worth of the property.

281.    Plaintiff paid $60,100.00 at the foreclosure sale.

282.    The foreclosure was based on fraud and deception.

283.    Defendants concealed material information from Plaintiff.

284.    Defendants manipulated the foreclosure process.

285.    The state court found irregularities and potentially deceptive conduct.

286.    Defendants have been unjustly enriched at Plaintiff's expense.

287.    Plaintiff has no adequate remedy at law.

288. Legal damages cannot fully compensate Plaintiff for his losses.

289. The uncertainty regarding the validity of the foreclosure and Plaintiff's title cannot be adequately remedied by monetary damages alone.

290. Equitable relief is necessary to prevent unjust enrichment and to do justice.

291. Plaintiff seeks restitution of the full $60,100.00 paid at the foreclosure sale.

292. Plaintiff seeks an order requiring Defendants to return the funds.

293. Plaintiff seeks such other equitable relief as the Court deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants as follows:

294. Compensatory damages against all Defendants in an amount to be determined at trial, including but not limited to the $60,100.00 paid at the foreclosure sale, litigation expenses, and lost investment opportunities.

295. Treble damages against all Defendants pursuant to 18 USCS § 1964.

296. Punitive damages against all Defendants in an amount sufficient to punish and deter similar conduct.

297. Restitution of the full $60,100.00 paid by Plaintiff at the foreclosure sale against all Defendants.

298. Prejudgment and post-judgment interest at the maximum rate allowed by law against all Defendants.

299.    Reasonable attorney's fees and costs pursuant to  18 USCS § 1964 and any other

applicable law against all Defendants.

300.    Such other and further relief as the Court deems just and proper.


**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

/s/ Willie L. Brown, pro se

Willie L. Brown

6389 Pinewood Hills Dr.

Jacksonville, FL 32218